UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HDNET MMA 2008 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:08-CV-0442-G |
| ZUFFA, LLC d/b/a THE ULTIMATE | ) | |
| FIGHTING CHAMPIONSHIP, | ) | **ECF** |
| | ) | |
| Defendant, | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| RANDY COUTURE, | ) | |
| | ) | |
| Interested Party. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the emergency motion of the plaintiff, HDNet MMA 2008

LLC ("the plaintiff" or "HDNet MMA 2008"), to remand this case back to the 193rd

Judicial District Court of Dallas County, Texas, for lack of subject matter jurisdiction.

For the reasons stated below, the motion is granted.

## I. BACKGROUND

On February 13, 2008, the plaintiff HDNet MMA 2008, a Nevada limited

liability company, filed this case in a state district court against Zuffa, LLC d/b/a The

Ultimate Fighting Championship ("Zuffa"), also a Nevada limited liability company, under the Texas Declaratory Judgments Act. The plaintiff is seeking interpretation of an employment agreement between Zuffa and a third party, Randy Couture ("Couture"). *See generally* Plaintiff's Original Petition for Declaratory Judgment ("Plaintiff's Petition"), *attached to* Defendant's Notice of Removal as Exhibit B.

Zuffa is a promoter of mixed martial arts ("MMA"),[1] known primarily for its brand of Ultimate Fighting Championship ("UFC") events. Randy Couture is one of the top MMA fighters in the world, and currently holds the UFC Heavyweight championship title.[2] *See* Notice of Removal at 4. In January of 2007, Couture and Zuffa entered into an agreement (the "Promotional Agreement") whereby Couture agreed to participate in four UFC fights. *Id.* at 5. Additionally, Couture and Zuffa agreed that all disputes concerning the Promotional Agreement would be resolved by arbitration in Nevada. *Id.*

In September of 2007, Mark Cuban, owner of the plaintiff and several related HDNet entities, announced his plan to create his own brand for producing,

---

[1]     Mixed martial arts is a full-contact combat sport where participants employ a wide variety of fighting techniques, including striking, grappling, and the occasional inadvertent (and illegal) eye-gouging. *See* http://ufc-ultimate-fighting.gungfu.com/.

[2]     Couture is a citizen of Nevada for jurisdictional purposes. During his illustrious career in the sport of mixed martial arts, Couture has earned several titles, as well as the nicknames "The Natural" and "Captain America." *See* http://sportsillustrated.cnn.com/2007/writers/todd_martin/08/22/Couture/.

promoting, and broadcasting MMA events.  *Id.* at 7.  Cuban created HDNet Fights, Inc. ("HDNet Fights"), a Delaware corporation based in Dallas, and HDNet MMA 2007 LLC ("HDNet MMA 2007"), a Delaware limited liability company with Texas citizenship by virtue of Cuban's ownership.  Notably, HDNet MMA 2007 is the only Cuban/HDNet entity licensed by the Texas Department of Licensing and Regulation to promote MMA events in Texas.  *Id.* at 7-8.  Using these two entities, Cuban put on two MMA events in Dallas, Texas in October and December of 2007.  *Id.* at 8.

Couture participated in two fights under the promotional agreement with Zuffa before tendering his "resignation" from UFC in a letter sent to Zuffa on October 11, 2007.  *Id.* at 5-6.  Couture and Zuffa disagree, however, over the effect of Couture's "resignation" -- Zuffa has invoked its right to "suspend" the contract for the duration of what it considers Couture's "retirement," while Couture has stated that he will be free of all contractual obligations and able to enter into a new promotional agreement in October of 2008.  *See* Plaintiff's Petition ¶¶ 2, 26.  As a result, it is unclear when Couture will be free to contract with other promoters. Couture and Zuffa are currently involved in two separate legal actions in Nevada -- an arbitration related to the parties' Promotional Agreement, as well as litigation in a Nevada state district court concerning the noncompetition provisions contained in a separate employment agreement between the parties.  *See* Notice of Removal at 5-6.

In December of 2007, Cuban began creating additional HDNet entities in the state of Nevada. The plaintiff, HDNet MMA 2008, is a limited liability company organized under the laws of Nevada, formed on December 28, 2007. Notice of Removal at 7. As a limited liability company, the plaintiff's citizenship is determined by the citizenship of its members. See *Carden v. Arkoma Associates*, 494 U.S. 185 (1990) (generally, the citizenship of artificial entities other than corporations is determined by the citizenship of their members); *Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 267 (7th Cir.), *cert. denied*, __ U.S. __, 127 S.Ct. 582 (2006); *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54-55 (1st Cir. 2006). HDNet MMA 2008's sole member is HDNet Sports, Inc. ("HDNet Sports"), a Nevada corporation formed on February 1, 2008, twelve days before the filing of this lawsuit on February 13, 2008.[3] Defendant Zuffa, LLC's Appendix to Notice of Removal at 1-8.

Couture and HDNet MMA 2008 entered into an agreement in early February of 2008. *See* Plaintiff's Petition ¶¶ 22-23. The agreement is dependent on the

---

[3] Cuban is the sole manager of HDNet MMA 2008 and the sole director of HDNet Sports.

termination date of Couture's agreement with Zuffa, with HDNet MMA 2008 aiming to promote an MMA event in Dallas, Texas in October of 2008.[4]  *Id.*

HDNet MMA 2008 argues that Zuffa removed the case "purely for the purposes of delay," contending that Zuffa cannot meet its burden for establishing removal jurisdiction.  *See* Plaintiff HDNet's Emergency Motion to Remand, Request for Expedited Briefing Schedule, and Brief in Support Thereof ("Motion to Remand") at 1.  It is undisputed that both parties are Nevada limited liability companies.  Zuffa asks the court to look beyond the pleadings and to disregard the citizenship of HDNet MMA 2008, arguing that HDNet MMA 2008 was created solely for the purpose of bringing the instant declaratory judgment action and destroying diversity.  *See generally* Defendant Zuffa, LLC's Response to Plaintiff HDNet's Motion to Remand ("Response"); Notice of Removal at 11-14.

## II.  ANALYSIS

### A.  Legal Standard for Removal Jurisdiction

Title 28 U.S.C. § 1441(a) permits removal of "any civil action brought in a State Court of which the district courts of the United States have original jurisdiction."  Under this statute, "[a] defendant may remove a state court action to federal court only if the action could have originally been filed in the federal court."

---

[4]     The fight would likely match Couture against Fedor Emelianenko, who is known in MMA circles as the "Russian Experiment."  *See* http://www.themmaboards.com/showthread.php?t=632.

*Aaron v. National Union Fire Insurance Company of Pittsburg, Pennsylvania*, 876 F.2d 1157, 1160 (5th Cir. 1989), *cert. denied*, 493 U.S. 1074 (1990) (citations omitted). Removal jurisdiction must be strictly construed, however, because it "implicates important federalism concerns." *Frank v. Bear Stearns & Company*, 128 F.3d 919, 922 (5th Cir. 1997); see also *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). Furthermore, "any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court." *Cross v. Bankers Multiple Line Insurance Company*, 810 F.Supp. 748, 750 (N.D. Tex. 1992); see also *Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100, 108-09 (1941); *Healy v. Ratta*, 292 U.S. 263, 270 (1934). The burden of establishing federal jurisdiction is on the party seeking removal. *Frank*, 128 F.3d at 921-22; *Willy*, 855 F.2d at 1164.

Typically, whether an action should be remanded to state court must be resolved by reference to the plaintiff's pleading at the time of removal. *State of Texas v. Alliance Employee Leasing Corp.*, 797 F.Supp. 542, 544 (N.D. Tex. 1992). If the court can make this determination by reference to the plaintiffs' complaint alone, the court need not go further. However, should a district court need to go beyond the pleadings to assess the propriety of removal, it may do so. *Id.*

There are two principal bases upon which a district court may exercise removal jurisdiction: (1) the existence of a federal question and (2) complete diversity of citizenship among the parties. *See* 28 U.S.C. §§ 1331, 1332. The court can properly

exercise jurisdiction on the basis of diversity of citizenship if the parties are of completely diverse citizenship and the case involves an amount in controversy of at least $75,000. *See* 28 U.S.C. § 1332(a). District courts have federal question jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331; *Frank*, 128 F.3d at 922. The defendant has adequately demonstrated by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. *See* Notice of Removal at 14-16. Since the defendant alleges only diversity jurisdiction, the court will limit its examination to whether there is complete diversity of citizenship between the parties.[5]

---

[5] The plaintiff argues, as an additional basis for remand, that because Couture has not consented, removal is improper. *See* Motion to Remand at 8-10. As a general rule, claims filed in state court against multiple defendants cannot be removed to federal court unless all defendants consent to the removal. *Farias v. Bexar County Board of Trustees for Mental Health Mental Retardation Services*, 925 F.2d 866, 871 (5th Cir.), *cert. denied*, 502 U.S. 866 (1991). This unanimous consent rule is applicable in cases of diversity of citizenship jurisdiction as well as cases of federal question jurisdiction. *Id.*; see also *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 431 F.Supp.2d 109, 117-18 (D. Mass. 2006). There are, however, several exceptions to the unanimity rule. Removing defendants need not obtain consent from nominal or unnecessary defendants, see *Farias*, 925 F.2d at 871, or from defendants who have not been served at the time of removal, see *Jones v. Houston Independent School District*, 979 F.2d 1004, 1007 (5th Cir. 1992). Here, the removing defendant alleges that Couture's consent was not required because (1) Couture had not yet been served at the time of removal; and (2) Couture is only a nominal party to the underlying state action, because Couture is bound by the mandatory arbitration provision of his agreement with Zuffa. *See* Response at 21-23. However, the court need not resolve this issue, as the motion to remand is granted on other grounds.

## B. Lack of Diversity or Collusive Manipulation?

At first glance, the plaintiff's motion to remand appears straightforward: the suit is between two Nevada limited liability companies, and therefore, on its face, does not invoke federal diversity jurisdiction under 28 U.S.C. § 1332.  Zuffa contends, however, that HDNet MMA 2008 was improperly created to avoid this court's diversity jurisdiction.  HDNet MMA 2008 was created just a few weeks after Cuban announced his plans for an October fight featuring Couture, its sole member was incorporated shortly thereafter, and this lawsuit was filed only days after that.

Both sides cite numerous cases to support their positions -- and while many of the cases are factually similar, not a single case addresses the set of facts before the court.  Zuffa has alleged collusive manipulation of the diversity statute on the part of the plaintiff, and there is evidence suggesting support for such a claim.  What is not clear, however, is to what extent the court can consider such evidence in a removal action, and whether the evidence is strong enough to require the court to disregard the citizenship of the plaintiff and find diversity jurisdiction.

Diversity jurisdiction, a statutory creation, was designed to provide protection to out-of-state defendants from bias and favoritism of state courts.  See *Burgess v. Seligman*, 107 U.S. 20, 34 (1883) ("[T]he very object of giving to the national courts jurisdiction . . . in controversies between citizens of different states was to institute independent tribunals, which . . . would be unaffected by local prejudices and

sectional views . . . ."). However, there is no statute that expressly inhibits the use of devices to *defeat* federal jurisdiction. Section 1359 of Title 28 "expresses a policy against the creation of federal jurisdiction and not against its avoidance." *Pallazola v. Rucker*, 797 F.2d 1116, 1120 (1st Cir. 1986) (quoting *McSparran v. Weist*, 402 F.2d 867, 875 (3rd Cir. 1968) (en banc), *cert. denied*, 395 U.S. 903 (1969)).

Recently, however, federal courts have protected their jurisdiction with increasing vigilance, invoking the authority to examine the underlying nature of transactions that have the effect of manipulating diversity jurisdiction.[6] Not surprisingly, without guidance from statute or the Supreme Court, there is hardly a consistent body of law addressing attempts to *defeat* diversity jurisdiction.

The plaintiff, relying on *Amalgamated Gadget, L.P. v. Mack*, 2004 WL 549483 (N.D. Tex. 2004), contends that any inquiry into the plaintiff's motive for

---

[6]     See, *e.g.*, *Grassi v. Ciba-Geigy, Limited*, 894 F.2d 181 (5th Cir. 1990) (discussed *infra*); *Douglas Energy of New York, Inc. v. Mobil Oil Corporation*, 585 F.Supp. 546 (D.C. Kan. 1984) (holding that otherwise valid diversity jurisdiction could not be defeated by the act of incorporating in the defendant's home state and receiving an assignment of the claim only a few days before filing an action for the *express* purposes of preventing removal to a federal forum); *JMTR Enterprises, L.L.C. v. Duchin*, 42 F.Supp.2d 87 (D. Mass 1999) (citizenship of newly-created corporation which became assignee of litigation rights of residents from another state was disregarded in determining whether diversity existed). Other courts have looked at whether or not circumventing diversity was the *sole* reason for assigning a claim; but see *Ivanhoe Leasing Corporation v. Texaco, Inc.*, 791 F.Supp. 665 (S.D. Tex. 1992) (distinguishing *Grassi* on the grounds that where a partial assignment of a claim is made *only* to destroy or create diversity jurisdiction, the court should disregard jurisdiction, but where an assignment of a claim is made for reasons *in addition to* destroying diversity, the court's should refrain from looking beyond the pleadings).

establishing Nevada citizenship is improper.  Motion to Remand at 1, 7-8.  In *Mack*, the plaintiff, NYC 999, a limited liability company and citizen of New York, was created just before the commencement of a suit against New York defendants.  NYC 999 was then assigned the rights to "any and all causes of action *arising under Texas state law*" by $R^2$ Investments ("$R^2$"), a Cayman Island Limited Liability Company -- and therefore a diverse party subject to removal under 28 U.S.C. § 1441.  *Id.* at *1, 2 (emphasis in original).  The defendants removed the action, claiming that $R^2$, the diverse corporation that assigned the claim, was in fact the real party in interest.  *Id.* The court disagreed, citing with approval *Provident Saving Life Assurance Society of New York v. Ford*, 114 U.S. 635 (1885) (holding that a colorable assignment of a cause of action, made to prevent removal to federal court, prevents a federal court from assuming jurisdiction).  *Mack* weighs in favor of the plaintiff, and the facts are similar to those before the court today.  However, the analysis in *Mack* hinged on whether the assignment from $R^2$ to NYC 999 was a complete or a partial assignment.  The instant case does not involve an assignment of claims; instead of an assignment, the plaintiff entity was created before any claims accrued, and subsequently entered into the contract with Couture that formed a basis for the declaratory judgment action. The plaintiff argues, though, that to the extent this case could be classified as an "assignment," it resembles a complete assignment.  Motion to Remand at 7.  The court agrees.

Both sides lay claim to *Grassi v. Ciba-Geigy, Limited*, 894 F.2d 181 (5th Cir. 1990), as support for their positions. In *Grassi*, the Fifth Circuit held that a district court could look to the motivation behind an otherwise valid partial assignment of claims to determine whether the assignment was collusive and intended to destroy diversity. *Grassi*, 894 F.2d at 182-85. The *Grassi* court distinguished prior Supreme Court precedent in which that court held that a valid assignment under state law, which defeated diversity jurisdiction, should be respected. See *Provident Savings Life Assurance Society of New York v. Ford*, 114 U.S. 635, 640-41 (1885); *Oakley v. Goodnow*, 118 U.S. 43, 44 (1886); *Leather Manufacturers' National Bank v. Cooper*, 120 U.S. 778, 781 (1887).[7] Though the *Grassi* decision does lend support to the idea that a court can look beyond the pleadings when scrutinizing diversity, *Grassi*, unlike the instant case, involved a partial assignment.

Zuffa, in its response, cites a line of cases reflecting what it calls "the substantial body of authority in which courts have validated their obligation to scrutinize and disregard various forms of collusive divises." *See* Response at 7.

---

[7] The Fifth Circuit in *Grassi* read *Provident* as standing for two propositions: "First, that federal courts lack the power to look beyond the pleadings in determining the existence of diversity jurisdiction absent specific statutory authorization; and second, that state law and the state court systems will adequately defend a defendant's right to removal jurisdiction against devices designed to defeat it. These propositions have not fared well since 1887." *Id.* at 183. This dictum, while undercutting the *Grassi* court's reliance on *Provident*, does not erode the central holding of *Provident* that complete assignments are not to be scrutinized by the court.

However, the cases Zuffa relies on are distinguishable from the case at bar.[8]  In

*Panalpina Welttransport GmBh v. Geosource, Inc.*, 764 F.2d 352, 355 (5th Cir. 1985),

the Fifth Circuit determined the requirements for diversity jurisdiction were not met.

The court noted that "[i]n the case at bar the plaintiffs have not alleged, nor does it

appear from this record that they could likely prove, that [the defendant] was

incorporated in the Cayman Islands *solely* for the purposes of destroying diversity

jurisdiction in a suit by an alien corporation" (emphasis added).  Such is case with

HDNet MMA 2008.  Zuffa presents circumstantial evidence suggesting that the

plaintiff entity was formed, in part, to prevent Zuffa from removing the case.

However, Zuffa cannot say that this was the *only* reason HDNet MMA 2008 was

formed in Nevada.

    In its notice of removal, Zuffa argues that removal is appropriate based on

diversity jurisdiction because it is "the Texas-based HDNet companies . . . that have

the real interest in, seek to benefit from, and exercise control over this declaratory

judgment action."  Notice of Removal at 2.  Both HDNet Fights and HDNet MMA

---

[8]     In *Wecker v. National Enameling & Stamping Company*, 204 U.S. 176
(1907), a case relied on by the defendant, the Supreme Court, while noting support
for the scrutiny of collusive manipulation of jurisdiction, did so in the context of
improper joinder.  Another case relied on by the defendant, *Miller & Lux, Inc. v. East
Side Canal & Irrigation Company*, 211 U.S. 293, 305-06 (1908), also involved a
plaintiff entity formed "for the purpose of having the matters in dispute . . .
determined in the Federal court rather than in the state court."  Finally, *Kramer v.
Carribean Mills*, 394 U.S. 823 (1969), another case relied on by the defendant, also
involved the assignment of a claim to a diverse party to create diversity jurisdiction.

2007 were already licensed and involved in the business of promoting MMA events in Texas, and so Zuffa argues that there "is no valid business reason for creating and incorporating HDNet MMA 2008 in Nevada . . . other than to manipulate jurisdiction." Notice of Removal at 12. In its reply, HDNet MMA 2008 notes that businesses can and do choose to organize in different states for different reasons. *See* Plaintiff HDNet's Reply Memorandum in Further Support of HDNet's Emergency Motion to Remand ("Reply") at 5-6. The plaintiff also points out that HDNet MMA 2007 has not been involved in promoting MMA events since this year began, and that any applications the plaintiff needs to secure with the licensing authorities can be resolved once the plaintiff's contract with Couture becomes effective. *See* Reply at 6.

Ultimately, this court sees only a slight difference between a complete assignment, a partial assignment, or the situation at bar where a plaintiff simply creates an entity in the defendant's home state and pursues a lawsuit. However, the court recognizes the danger inherent in second-guessing the motivation behind business decisions. As much as the defendant wishes this case to be an assignment case, there is no assignment here to scrutinize. The burden on the party claiming that it has been improperly denied its statutory right to removal is a heavy one. See, *e.g.*, *Rodriguez v. Sabatino*, 120 F.3d 589, 591 (5th Cir. 1997), *cert. denied*, 523 U.S. 1072 (1998); *Cavallini v. State Farm Mutual Auto Insurance Company*, 44 F.3d 256, 259 (5th

Cir. 1995). The timing and circumstances surrounding the formation of the HDNet Nevada entities presents circumstantial evidence of collusive manipulation, but without more the defendant has not discharged this heavy burden. The cases that Zuffa relies on involve situations where the assignee entity could not demonstrate a legitimate *raison d'etre* other than for the destruction of diversity. Here, though the circumstantial evidence suggests the plaintiff might have been motivated in part by the underlying lawsuit, as with *Ivanhoe Leasing*, the court also finds the plaintiff "was also influenced by other factors unrelated to jurisdiction." *Ivanhoe*, 791 F.Supp. at 667. This court is confident that the issues between the plaintiff and the defendant can be adequately addressed in state court.

Finally, the plaintiff requests costs and fees pursuant to 28 U.S.C. § 1447(c). The court does not find that Zuffa lacked an objectively reasonable basis for removal and therefore declines to award costs and fees to the plaintiff.

## III. <u>CONCLUSION</u>

For the reasons set forth above, the defendant has failed to meet its heavy burden of establishing removal jurisdiction, and therefore the plaintiff's emergency motion to remand is **GRANTED**. The clerk shall mail a certified copy of this memorandum opinion and order to the district clerk of Dallas County, Texas. 28 U.S.C. § 1447(c).

**SO ORDERED**.

April 9, 2008.

_A. Joe Fish_

**A. JOE FISH**
**Senior United States District Judge**